J-S69033-17

2018 PA Super 183

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| TAREEK ALQUAN HEMINGWAY | : | No. 684 WDA 2017 |

Appeal from the Order March 31, 2017
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0002262-2016

BEFORE:   BOWES, J., RANSOM, J., and STEVENS*, P.J.E.

CONCURRING OPINION BY BOWES, J.:                    **FILED JUNE 26, 2018**

I join Judge Ransom's thoughtful opinion.  I write separately to respond to President Judge Emeritus Stevens's dissent, and to note my view that our opinion today is limited to the facts.  I would not foreclose a finding that a command to remove hands is constitutionally reasonable even in the absence of reasonable suspicion.  My analysis follows.

Judge Stevens states that the police officers "had every right to approach and question Appellee, especially at 2 a.m., in a high crime area." Dissenting Opinion at 1.  That is accurate, but misleading as it fails to consider Appellee's rights.  An officer is free to approach and ask questions.  "Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen."

_____
*   Former Justice specially assigned to the Superior Court.

*United States v. Drayton*, 536 U.S. 194, 200 (2002) (citations omitted). The dissent ignores the fact that the flip side of that doctrine is that the citizen can simply decline the invitation. "If a reasonable person would feel free to terminate the encounter, then he or she has not been seized." *Id*. Thus, while officers had the right to approach Appellee and ask him to remove his hands, Appellee had the right to decline the request under the mere encounter framework.

Next, Judge Stevens errs by failing to recognize that Appellee was not **asked** to remove his hands, he was **ordered** to do so. The dissent maintains that Appellee was not seized when told to show his hands, and opines that, for purposes of ensuring the officers' safety, Appellee was required to honor the request. "[T]he record shows when the officers first approached Appellee on foot, they asked Appellee to take his hand from his pocket *for their safety*. At this point, the interaction between Appellee and the officers remained a mere encounter, and the officer's request to see Appellee's hands did not turn the encounter into an investigative detention." Dissenting Opinion at 6 (emphasis in original).

I cannot agree that this interaction was a mere encounter. According to Judge Stevens, the officers merely asked Appellee to show his hands. When Appellee failed to do so, his failure to abide by these requests justified the frisk. "Appellee's refusal to comply with the officer's request to refrain from concealing his hands in his pocket gave the officer reason to believe that Appellee could have a weapon and justified the subsequent protective frisk."

Dissenting Opinion at 8. This analysis falls apart once one considers, under mere encounter principles, that Appellee was not obligated to submit to the show of authority. How, then, does the refusal to comply create reasonable suspicion that Appellee was armed and dangerous? The dissent appears to embrace the dangerous view, espoused by the Commonwealth, that an individual with nothing to hide will simply obey the authorities.

> Appellee's refusal to submit to a simple request by Ptlm. Detwiler to remove his hands, is certainly a factor that a reasonable police officer may consider when determining whether to demand a person submit to a "*Terry* frisk". Had Appellee simply removed his hand, Ptlm. Detwiler may have been able to deal with the situation differently.

Commonwealth's brief at 7 n.1.

> The dissent continues:

> When an individual refuses to comply with a reasonable request to remove his hands from his pocket and the circumstances lead an officer to believe that the individual is armed and dangerous, the police officer should have the right to do a brief pat-down search of that individual for the *police officer's personal safety.* We should not create a policy that says otherwise.

Dissenting opinion at 8.

Respectfully, this case is not about creating policies, it is about applying the Fourth Amendment, and I do not find support in the law for that conclusion. With respect to frisks, it is well-settled that

> Warrantless searches and seizures (such as occurred in this case) are unreasonable *per se,* unless conducted pursuant to specifically established and well-delineated exceptions to the warrant requirement. One such exception, the *Terry* "stop and frisk," permits a police officer to briefly detain a citizen for investigatory purposes if the officer observes unusual conduct which leads him

> to reasonably conclude, in light of his experience, that criminal activity may be afoot.
>
> ***Terry*** further held that when an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others the officer may conduct a pat down search to determine whether the person is in fact carrying a weapon. The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence.

***Commonwealth v. Simmons***, 17 A.3d 399, 403 (Pa.Super. 2011) (cleaned up).

Thus, during a ***Terry*** stop, *i.e.*, a stop supported by reasonable suspicion, a frisk is permitted when there is a justification to believe that the individual is armed and dangerous. On what grounds did the officer believe that Appellee, who was not under investigation for any criminal activity, was armed and dangerous? Aside from the refusal to submit to authority, I discern no reason. Judge Stevens does not grapple with that question, and states that the officer should be permitted to conduct a frisk due to the failure to comply with the request. Therefore, the dissent appears to promulgate a *per se* rule that an officer may approach any citizen for any reason, and demand to see their hands. The result of noncompliance is an invasive pat-down search. That rule cannot be squared with precedent.

As the majority noted, this decision is largely limited to this "fact-specific inquiry[.]" Majority opinion at 6. I do not interpret our opinion to foreclose the possibility that an order to remove hands, even in the absence of

reasonable suspicion, is constitutionally valid. I offer these additional thoughts.

There is no doubt that officer safety is a weighty and valid consideration in a Fourth Amendment analysis. Indeed, "'[T]he ultimate touchstone of the Fourth Amendment,' we have often said, 'is reasonableness.'" *Michigan v. Fisher*, 558 U.S. 45, 47 (2009) (quoting *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006)). Warrantless seizures and searches thus may be deemed reasonable if "the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 394 (1978) (quotation marks and citation omitted).

Presently, a seizure occurred when Appellee was ordered to remove his hands. Thus, the question is whether the seizure was reasonable. The seizure was minimally invasive to the degree it was *de minimis*, as there is no great privacy interest involved in removing one's hands from pockets. Nevertheless, it was a seizure. Thus, there must be some showing that the law enforcement needs were so compelling that the seizure, no matter how minimal, was objectively reasonable. On this point, I find persuasive the following analysis set forth by the United States Court of Appeals for the Ninth Circuit in *United States v. Enslin*, 327 F.3d 788 (9th Cir. 2003).

In *Enslin*, federal marshals were searching for a fugitive, and had information that the fugitive was in a particular home. The marshals received

permission to search the home, and in the course of the search entered a back bedroom. Enslin was in the bed, and had apparently been sleeping. "Concerned for their safety while they searched the room . . . [marshals] ordered Enslin to show his hands." *Id*. at 791. He complied, and his movement shifted the covers, revealing a gun. The Court determined that the gun was not subject to suppression. I quote the pertinent analysis in full.

**B.** *The marshals' order to Enslin to show his hands imposed only a* **de minimis** *obligation upon him and does not require suppression of the gun that was then in plain view.*

Enslin asserts that he was seized without reasonable suspicion when the marshals ordered him to show his hands as they entered the back bedroom. Therefore, Enslin contends that the district court should have suppressed the gun that the marshals saw when Enslin complied with their order. To address this claim, we must determine whether the marshals' order constituted a seizure under the Fourth Amendment and, if so, whether it was nonetheless reasonable under the circumstances. We answer both inquiries in the affirmative.

**1.** *The show hands order constituted a seizure under the Fourth Amendment.*

The Government argues that the marshals' order to Enslin to show his hands did not constitute a seizure pursuant to the Fourth Amendment. We disagree. "The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." The appropriate inquiry is whether the marshals' order "in some way restrain[ed]" Enslin's liberty such that a reasonable person under the circumstances would not have felt free to disregard the order. Even if the official interference with an individual's liberty is brief, provided that it is some sort of "meaningful interference ... with an individual's freedom of movement," it constitutes a seizure.

We think that the show hands order was a "meaningful interference" with Enslin's freedom. He had his hands covered and two armed marshals ordered him to reveal his hands. A

- 6 -

reasonable person in Enslin's situation would not have felt free to ignore the request of the marshals, who likely had their hands on their weapons when they gave the order. Therefore, the marshals' order to Enslin to show his hands constituted a seizure within the meaning of the Fourth Amendment.

**2. *The show hands order did not violate the Fourth Amendment because it was not an* unreasonable *seizure.***

Our conclusion that the show hands order was a seizure does not end the inquiry, "[f]or the Fourth Amendment does not proscribe all searches and seizures, but only those that are unreasonable." The marshals' order to Enslin to show his hands, although technically a seizure, does not violate the Fourth Amendment because it was not an unreasonable seizure under the circumstances. The obligation placed upon Enslin to reveal his hands for officer safety during the search for a fugitive was *de minimis* and thus constitutionally reasonable.

Any inquiry into the reasonableness of a seizure requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." In this case, that balance affirmatively favors the Government's interest in officer safety, leading us to conclude that the marshals' order was constitutional. On Enslin's side of the balance, requiring an individual to reveal his hands does force him to show a part of his person that was otherwise concealed. However, the nature and quality of the intrusion are minimal.

***Id***. at 795–96 (footnotes omitted).

I find this analysis compelling. As applied herein, the order to show hands resulted in a seizure, which was minimally invasive. However, I cannot find that it was reasonable under these particular circumstances. ***Enslin*** differs from in this case to a significant degree in terms of the facts, as the marshals therein were attempting to serve an arrest warrant for a fugitive, and were lawfully authorized to search the home. Herein, Appellee was merely

on the street. While I agree that the fact the encounter occurred at 2:00 a.m. in a high crime area is pertinent to the analysis, the fact is that the officers were responding to a simple noise complaint. There is no indication that Appellee and his apparent companions were doing anything warranting a police interaction beyond a mere encounter.[1] Thus, the only need to protect officer safety in this situation was caused by their initiating the encounter. ***Cf. Kentucky v. King***, 563 U.S. 452, 462 (2011) ("Where, as here, the police did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment, warrantless entry to prevent the destruction of evidence is reasonable and thus allowed.").

I would not find, as set forth by the analysis employed in ***Enslin***, that all orders to show hands are constitutionally unreasonable even in the absence of a seizure supported by reasonable suspicion of criminal activity. In other cases, there may well be additional facts that tip the Fourth Amendment balance in favor of law enforcement safety. Here, however, the officers conceded that they did not intend to address the noise complaint before

_____

[1] The Commonwealth asserts that the officers had reasonable suspicion to detain Appellee, which we reject. ***See*** Majority Opinion at 8-9. If the Commonwealth were correct on this point, the analysis with respect to officer safety would dramatically shift, as the existence of reasonable suspicion may be a basis to further temporarily restrict Appellee's liberty. ***See e.g. Pennsylvania v. Mimms,*** 434 U.S. 106 (1977) *(per curiam)* (explaining that once a motor vehicle is lawfully detained, officers may order the driver to exit the vehicle due to the interest in officer safety outweighing the *de minimis* additional intrusion).

engaging Appellee, whom they suspected would leave the area if the officers addressed the noise complaint. **See** Majority opinion at 2. Therefore, the officers had a mere hunch that Appellee may have been involved in criminal activity, and seized him on that impermissible basis. Therefore, I join the majority opinion.