COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Huff and Senior Judge Frank
Argued by teleconference

UNPUBLISHED

VICTOR ANDRES ZELAYA

v.     Record No. 1987-19-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE GLEN A. HUFF
NOVEMBER 10, 2020

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Donald M. Haddock, Judge Designate

Paul E. Pepper, Public Defender, for appellant.

Leanna C. Minix, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee

Following a bench trial in the Circuit Court for the City of Alexandria (the "trial court"),

Victor Andres Zelaya ("appellant") was convicted for unlawfully carrying a concealed weapon in

violation of Code § 18.2-308(A). On appeal, he challenges the validity of that conviction,

arguing that (1) the conviction was based upon evidence gathered in violation of his Fourth

Amendment right to be free from unreasonable seizures and (2) even if there was no violation of

his Fourth Amendment rights, the evidence was nonetheless insufficient as a matter of law to

support his conviction. For the following reasons, this Court affirms.

I. BACKGROUND

On appeal, this Court "consider[s] the evidence and all reasonable inferences flowing

from that evidence in the light most favorable to the Commonwealth, the prevailing party at

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

trial." Williams v. Commonwealth, 49 Va. App. 439, 442 (2007) (*en banc*) (quoting Jackson v. Commonwealth, 267 Va. 666, 672 (2004)). So viewed, the evidence is as follows:

Officer Timothy Larson ("Officer Larson") was on duty for the Alexandria City Police Department on October 22, 2017. At approximately two in the morning on that date, he received instructions from police dispatch to report to the South Port apartment complex (the "apartment complex") in response to a call from a security officer from the complex.[1] In that call, the security officer expressed concern about a "dark blue Honda vehicle" in the apartment complex's parking lot occupied by two persons in the front seat and "a male sitting in the rear passenger seat . . . holding a firearm." The security officer also explained that the vehicle was not parked in any particular parking spot, but rather was "stopped in the middle of the roadway" within the parking lot. In light of those circumstances, the security officer requested law enforcement assistance to "verify that [the suspected persons] were not trespassing."[2]

Officer Larson arrived at the apartment complex shortly thereafter and spoke with David Ndimufoa ("Ndimufoa"), the security guard who placed the call to the police. Ndimufoa relayed to Officer Larson that "the vehicle which was still parked in the roadway was the vehicle in question and that . . . he observed a firearm in the rear passenger's possession."

After briefly discussing the matter with Ndimufoa, Officer Larson approached the vehicle and observed a male–the appellant in this appeal–standing next to the rear passenger side of the vehicle. As Officer Larson neared the vehicle, appellant shut the rear passenger door and the other two occupants immediately drove away. Officer Larson called out for the vehicle to stop,

---

[1] The record reflects that all of the information provided by the security guard in the phone call was relayed to Officer Larson in the dispatch.

[2] Officer Larson testified at the suppression hearing that the main purpose of his investigation was to look into "any number of incidences that could have involved a firearm along with the initial trespassing concerns of the security officer."

- 2 -

but it failed to do so.[3]  At that point, Officer Larson turned his attention to appellant and instructed him to place his hands on the top of his head.  Upon raising his hands in compliance with Officer Larson's instruction, appellant's shirt lifted above his waist, which in turn revealed a "curved object" that Officer Larson believed to be "the handle of a revolver."  Officer Larson then detained appellant, removed the object from appellant's waistband, and confirmed that the object was in fact a .22 caliber revolver.

Appellant was convicted in the Alexandria General District Court for unlawfully carrying a concealed firearm in violation of Code § 18.2-308(A).  Appellant appealed to the trial court and filed a pretrial motion to suppress.  In that motion, appellant contended that (1) Officer Larson seized him when he instructed him to place his hands above his head, (2) the seizure was not supported by reasonable and articulable suspicion that he was engaged in any criminal activity or was armed and dangerous, and (3) that any evidence derived from the seizure was unconstitutionally obtained and should therefore be suppressed from trial.

The trial court denied appellant's motion, and the matter proceeded to a bench trial.  Appellant was found guilty of violating Code § 18.2-308(A) and sentenced to five days in jail, with all five days suspended for a period of two years.  Appellant filed a motion to reconsider, repeating the arguments he had made in his motion to suppress.  The trial court denied that motion, finding that Officer Larson possessed reasonable suspicion that appellant was armed and dangerous and had committed or was poised to commit a "robbery or carjacking . . . ."  Appellant then filed a motion to set aside the verdict, arguing that the evidence was insufficient as a matter

---

[3] The record is unclear as to whether the occupants of the vehicle heard Officer Larson tell them to stop.  However, because we view the evidence in the light most favorable to the Commonwealth and resolve evidentiary ambiguities in its favor, we assume that the vehicle's occupants did hear Officer Larson's command and nevertheless ignored it.

- 3 -

of law to support finding him guilty of unlawfully possessing a concealed weapon. The trial court denied that motion as well.

This appeal followed.

## II. ANALYSIS

Appellant asserts that he was illegally seized under the Fourth Amendment and that the trial court's denial of his motion to suppress was therefore in error. Alternatively, he argues that even if the trial court's denial of his motion to suppress was not erroneous, the evidence in the record was insufficient to support his conviction for unlawfully carrying a concealed firearm. This Court addresses each of these arguments in turn.

### A. Officer Larson's Seizure of Appellant Did Not Violate the Fourth Amendment

Appellant contends that Officer Larson lacked reasonable and articulable suspicion that he was engaged in any criminal activity or that he was armed and dangerous, which therefore rendered Officer Larson's seizure of him unlawful under the Fourth Amendment. He further avers that Officer Larson's intrusion of his liberty by instructing him to place his hands above his head was unreasonable under the circumstances. In addressing these arguments, this Court considers three separate inquiries: (1) whether appellant was seized for purposes of the Fourth Amendment, (2) whether Officer Larson had reasonable articulable suspicion that appellant was engaged in criminal activity to support a seizure of appellant, and (3) whether Officer Larson's instruction for appellant to raise his hands above his head was a lawful intrusion of appellant's personal liberty. Answering each of these questions in the affirmative, this Court disagrees with appellant and affirms the trial court's ruling.

### 1. Standard of Review

A review of a defendant's claim that he was "seized" in violation of the Fourth Amendment presents a mixed question of law and fact that is reviewed *de novo*. Brooks v.

Commonwealth, 282 Va. 90, 94 (2011). In making this determination, Virginia courts give deference to any factual findings of the trial court, Harris v. Commonwealth, 276 Va. 689, 694 (2008), but "determine independently whether, under the law, the manner in which the evidence was obtained satisfies constitutional requirements[,]" McCain v. Commonwealth, 261 Va. 483, 490 (2001). The appellant has the burden to "show that the [trial court's] ruling, when the evidence is considered in the light most favorable to the Commonwealth, constituted reversible error." Ford v. Commonwealth, 28 Va. App. 249, 255 (1998).

## 2. Appellant's Fourth Amendment Claim

The Fourth Amendment protects individuals against unreasonable seizures. U.S. Const. amend. IV. In determining the "reasonableness" of law enforcement's action in encounters with citizens for purposes of the Fourth Amendment, Virginia courts have recognized three types of police-citizen confrontations:

> First, there are consensual encounters which do not implicate the Fourth Amendment. Next, there are *brief investigatory stops . . . which must be based upon reasonable articulable suspicion that criminal activity is or may be afoot*. Finally, there are highly intrusive, full-scale arrests or searches which must be based upon probable cause to believe that a crime has been committed by the suspect.

McGee v. Commonwealth, 25 Va. App. 193, 199 (1997) (*en banc*) (emphasis added and internal citations and quotation marks omitted).

As a general rule, a seizure in the form of an investigatory stop occurs when a reasonable person would not feel free to leave or otherwise terminate an encounter with a law enforcement officer. Florida v. Bostick, 501 U.S. 429, 435-36, 438 (1991); see also Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968) ("[A seizure occurs] when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen . . . ."). An encounter automatically transfers into a seizure when an officer uses physical force to restrain the movement of an

individual. Furthermore, if an officer engages in a non-physical show of authority–e.g., a verbal command–then a seizure occurs if the individual *submits* to that show of authority. California v. Hodari D., 499 U.S. 621, 626 (1991).

Applying those principles to this case, this Court determines that appellant was seized for purposes of the Fourth Amendment. Officer Larson asserted lawful authority by directing appellant to put his hands over his head. Not only did appellant submit to that show of authority, but a reasonable person in appellant's situation would not have felt free to leave or otherwise terminate the encounter with Officer Larson. See Motley v. Commonwealth, 17 Va. App. 439, 443 (1993) (holding that seizure occurred when an officer approached defendant, commanded the defendant to "stop" where he was, and the defendant complied with the command).

Because appellant was seized under the Fourth Amendment, the next step in the analysis is whether, at the time of the seizure, Officer Larson had reasonable and articulable suspicion that appellant was engaged in criminal activity. This Court holds that he did.

It is well-established that reasonable suspicion requires more than an "inchoate and unparticularized suspicion or 'hunch.'" Terry, 392 U.S. at 27. Nonetheless, it requires "considerably less than proof of wrongdoing by a preponderance of the evidence" and is "obviously less demanding" than the degree of certitude required for probable cause. United States v. Sokolow, 490 U.S. 1, 7 (1989). Thus, although there is "no 'litmus test' for reasonable suspicion[,]" Castaneda v. Commonwealth, 7 Va. App. 574, 580 (1989), law enforcement will as a general matter establish reasonable suspicion so long as that suspicion entails "a moderate chance of finding evidence of wrongdoing[,]" Safford Unified Sch. Dist. No. 1 v. Redding, 557 U.S. 364, 371 (2009).

In determining whether law enforcement possessed reasonable suspicion of criminal activity, this Court evaluates the "totality of [the] circumstances." Parker v. Commonwealth,

255 Va. 96, 104 (1998). Under that standard, this Court views the facts "objectively through the eyes of a reasonable police officer" and determines if such an officer "could have entertained an articulable and reasonable suspicion that the defendant was involved in unlawful activity." Murphy v. Commonwealth, 9 Va. App. 139, 144 (1989) (citing Zimmerman v. Commonwealth, 234 Va. 609, 612 (1988)).

Looking to the totality of the circumstances, Officer Larson did possess reasonable and articulable suspicion that appellant was engaged in criminal activity. At the time Officer Larson encountered appellant, he was aware through communications with Ndimufoa that appellant was among a group of persons that Ndimufoa suspected were not residents of the apartment complex. Officer Larson was also aware that it was approximately two in the morning and that either appellant or one of his companions potentially possessed a firearm. See McCaskill v. Yankalunas, 245 F. App'x 274, 278 (4th Cir. 2007) ("[T]he time of day is an important consideration under the totality of the circumstances . . . ."). Moreover, when Officer Larson approached appellant and his companions, appellant immediately closed the rear door of the vehicle and his two companions fled from the scene.

Given these circumstances, Officer Larson at a minimum had reasonable suspicion that appellant was involved in some form of criminal trespass.[4] Indeed, the express purpose of Officer Larson's investigation was to ascertain "any number of [potential] incidences that could have involved a firearm along with the initial trespassing concerns of the security officer." Not only did the background information provided by Ndimufoa give Officer Larson reason to suspect appellant was potentially engaged in a trespassory act, but the decision of appellant's

---

[4] The trial court posited that Officer Larson likely possessed reasonable suspicion that appellant was engaged in the more serious crimes of "robbery or carjacking . . . ." Because we determine that Officer Larson had reasonable suspicion to believe that appellant was engaged in some form of criminal trespass, we need not address the trial court's alternative suggestions.

companions to flee the scene provided additional reason to suspect that appellant and his companions were in a place they were not permitted to be or were engaged in activities that were unlawful. See District of Columbia v. Wesby, 138 S. Ct. 577, 587 (2018) ("Unprovoked flight upon noticing the police . . . can be treated as suspicious behavior that factors into the totality of the circumstances." (internal citation and quotation marks omitted)); Illinois v. Wardlow, 528 U.S. 119, 124 (2000) ("Headlong flight–wherever it occurs–is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."). Thus, Officer Larson had reasonable suspicion that criminal activity was afoot and that appellant was engaged in such activity.[5]

The final inquiry, then, is whether Officer Larson's chosen assertion of authority–namely, instructing appellant to place his hands above his head–was reasonable under the circumstances. This Court holds that it was.

Here, Officer Larson not only had reasonable suspicion that appellant was engaged in criminal activity, but also had reasonable suspicion that appellant was armed and dangerous. See Andrews v. Commonwealth, 37 Va. App. 479, 490 (2002) (stating that reasonableness of seizure depends on presence of reasonable suspicion that a defendant was "engaged in wrongdoing and was armed and dangerous"). Indeed, the very facts that gave rise to Officer Larson's reasonable suspicion that appellant was engaged in criminal activity also supported a reasonable belief that appellant was a danger to Officer Larson's personal safety. As noted above, Ndimufoa warned

---

[5] By holding that Officer Larson had reasonable suspicion that appellant was engaged in some form of criminal trespass, we do not require that law enforcement suspect persons of violating *specific* statutory crimes in order to justify seizures of such persons. See Hatcher v. Commonwealth, 14 Va. App. 487, 490 (1992) ("[A]n officer need not suspect an individual of a particular crime in order to justify a Terry stop."). Indeed, it is well-settled that a "general suspicion of some criminal activity is enough . . . ." Id. Nonetheless, the criminal activity an officer suspects a person of engaging in must have *some* logical nexus to the facts known to the officer at the time of the seizure in question.

Officer Larson that either appellant or one of his companions was carrying a firearm and that the group potentially were trespassers. When Officer Larson approached the scene, appellant's companions fled while appellant remained where he was. Under these circumstances Officer Larson was entitled to "protect himself or others who may be in danger." Simmons v. Commonwealth, 217 Va. 552, 556 (1977).[6]

At the time appellant's companions fled the scene, it is beyond dispute that Officer Larson could have conducted a brief stop and a pat down of appellant's person. Arizona v. Johnson, 555 U.S. 323, 330 (2009) (emphasizing that a pat down is "reasonable under the Fourth Amendment" in circumstances where an officer has "reasonable suspicion that the persons temporarily detained are armed and dangerous"); see also Thompson v. Commonwealth, 54 Va. App. 1, 8 (2009) ("An officer . . . may frisk [a] suspect if he develops reasonable suspicion during the Terry stop to believe the particular person to be frisked is armed and dangerous."). That being the case, it stands to reason that instructing appellant to raise his hands above his head was among the "least intrusive means reasonably available" to Officer Larson in addressing the suspicion he had and protecting his personal safety. See Florida v. Royer, 460 U.S. 491, 500 (1983) (plurality opinion); see also United States v. Enslin, 327 F.3d 788, 795-96 (9th Cir. 2003)

---

[6] The totality of the circumstances here are sufficient to conclude that Officer Larson reasonably suspected that appellant was both armed *and* dangerous. Thus, we need not address the more controversial question of whether an officer can reasonably suspect that an individual is dangerous *merely because* an officer reasonably suspects that the individual is armed. We recognize that federal circuits remain split on the question, but we save any contribution to that debate for another day. Compare United States v. Robinson, 846 F.3d 694, 700-01 (4th Cir. 2017) (holding that officer had reasonable suspicion that defendant was dangerous because he was armed), with United States v. Leo, 792 F.3d 742, 748 (7th Cir. 2015) (stating that an officer may conduct a frisk of an individual when there is reasonable suspicion that the individual is "*both* armed and dangerous" (emphasis added)), and Northrup v. City of Toledo Police Dep't, 785 F.3d 1128, 1132 (6th Cir. 2015) ("Clearly established law required [the officer] to point to evidence that [the subject] may have been armed *and dangerous*. Yet, all he ever saw was that [the subject] was armed–and legally so." (internal citation and quotation marks omitted)).

(holding that law enforcement's order to a defendant to "show his hands" during an encounter was an intrusion of that defendant's liberty but was "*de minimis*" under the circumstances and therefore constitutionally reasonable ). Therefore, Officer Larson's chosen measure of telling appellant to place his hands above his head was not an unreasonable intrusion of appellant's liberty under the Fourth Amendment.

In sum, Officer Larson seized appellant when he instructed appellant to place his hands above his head upon witnessing appellant's companions flee the scene. Under the totality of the circumstances, that seizure was supported by reasonable and articulable suspicion that appellant was engaged in criminal activity and was armed and dangerous. In confronting those circumstances, Officer Larson's instruction of appellant to place his hands above his head was a reasonable measure to protect Officer Larson's personal safety and therefore did not violate appellant's Fourth Amendment rights. Accordingly, this Court affirms the trial court's denial of appellant's motion to suppress.

B. The Evidence Was Sufficient to Find Appellant Guilty of Unlawfully Possessing a Concealed Weapon

Appellant next argues that, even assuming the evidence derived from Officer Larson's seizure of him was constitutionally admissible, the totality of the evidence was insufficient to find him guilty of carrying a concealed weapon in violation of Code § 18.2-308(A). Specifically, he argues that the evidence did not support a finding that the firearm possessed by appellant was at any point hidden from common observation, which is a requirement for a conviction under Code § 18.2-308(A). This Court disagrees and affirms appellant's conviction.

1. Standard of Review

"When reviewing the sufficiency of the evidence to support a conviction, [this] Court will affirm the judgment unless the judgment is plainly wrong or without evidence to support it." Bolden v. Commonwealth, 275 Va. 144, 148 (2008). On appeal, this Court "does not 'ask itself

- 10 -

whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Britt v. Commonwealth, 276 Va. 569, 573-74 (2008) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson, 443 U.S. at 319).

Additionally, in assessing whether the evidence was sufficient to find a defendant guilty beyond a reasonable doubt at trial, this Court "review[s] the evidence in the light most favorable to the prevailing party, including any inferences the factfinder may reasonably have drawn from the facts proved." Camp v. Commonwealth, 68 Va. App. 694, 701 (2018) (quoting Hannon v. Commonwealth, 68 Va. App. 87, 92 (2017)). "This 'examination is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling . . . . [A]n appellate court must consider all the evidence admitted at trial that is contained in the record.'" Jennings v. Commonwealth, 67 Va. App. 620, 625 (2017) (quoting Perry v. Commonwealth, 280 Va. 572, 580 (2010)).

### 2. The Evidence Was Sufficient to Support Appellant's Conviction

Code § 18.2-308(A) states that "[i]f any person carries about his person, hidden from common observation, (i) any pistol, revolver, or other weapon [without a valid concealed handgun permit] . . . he is guilty of a Class 1 misdemeanor." Furthermore, the statute provides that "a weapon shall be deemed to be hidden from common observation when it is observable but is of such deceptive appearance as to disguise the weapon's true nature." Id. In addition to that statutory definition of the phrase "hidden from common observation," this Court has explained that a weapon is hidden from common observation "when it is 'hidden from all except those with an unusual or exceptional opportunity to view it.'" Winston v. Commonwealth, 26 Va. App. 746, 756 (1998) (quoting Main v. Commonwealth, 20 Va. App. 370, 372-73 (1995)).

Applying those principles here, this Court determines that the trial court's finding that appellant carried a concealed weapon in violation of Code § 18.2-308(A) was not plainly wrong or without evidence to support it. The evidence in the record shows that, at the time Officer Larson arrived at the scene and approached appellant, Officer Larson "did not observe anything on [appellant's] person." Moreover, Officer Larson testified that it was only after appellant raised his arms that the firearm became visible to him and that he was unable to see the firearm at any point prior. In this way, it was Officer Larson's command that gave him an "exceptional opportunity to view" appellant's firearm, which supports a finding that appellant's firearm was hidden from common observation. See Main, 20 Va. App. at 372-73.

Therefore, the trial court rationally could have inferred from the evidence that appellant's firearm was tucked away around his waistline, that his shirt was covering the firearm prior to him being told to raise his hands above his head, and that it was only Officer Larson's instructing of appellant to raise his hands above his head that revealed the firearm. Viewing the evidence in the light most favorable to the Commonwealth, the trial court's conviction of appellant cannot be said to be plainly wrong or without evidence to support it, and this Court affirms.

### III. CONCLUSION

In summary, Officer Larson possessed reasonable and articulable suspicion that appellant was armed and dangerous and involved in criminal activity. The protective measure taken by Officer Larson in commanding appellant to place his hands on his head, although a "seizure," was not an unreasonable one under the Fourth Amendment. Furthermore, because evidence in the record supported the trial court's finding that appellant was guilty of unlawfully carrying a concealed weapon, this Court affirms appellant's conviction.

Affirmed.