FILED

APR 30 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 09-10243 |
| Plaintiff - Appellee, | D.C. No. 3:08-CR-00017-LRH-RAM-1 |
| v. | |
| GERARDO A. CRUZ-CASTRO, | MEMORANDUM[*] |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 09-10244 |
| Plaintiff - Appellee, | D.C. No. 3:08-CR-00017-LRH-RAM-2 |
| v. | |
| PEDRO A. VELASQUEZ, | |
| Defendant - Appellant. | |

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Submitted April 12, 2010[**]
San Francisco, California

Before: NOONAN and CALLAHAN, Circuit Judges, and MARTINEZ, District Judge.[***]

While traveling eastbound on Interstate 80 in Nevada, Appellants Gerardo Cruz-Castro and Pedro Velasquez were stopped for speeding by Trooper William Murwin of the Nevada Highway Patrol. During the ensuing encounter, Murwin obtained Cruz-Castro's consent to search the vehicle and discovered 220 grams of cocaine base and 123.5 grams of heroin, for which Appellants were later charged with possession with intent to distribute. Appellants moved to suppress the narcotics evidence, and the district court denied their motions after an evidentiary hearing. Appellants subsequently were convicted by a jury and sentenced to the mandatory minimum of 10 years of imprisonment. On appeal, they challenge the denial of their suppression motions, the admission of certain trial testimony, and

---

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable Ricardo S. Martinez, United States District Judge for the Western District of Washington, sitting by designation.

the denial of safety-valve treatment at sentencing. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C § 3742, and we affirm.

## The Suppression Motions

Appellants raise several arguments contesting the denial of their motions to suppress. First, Velasquez asserts that there was insufficient evidence to conclude that the initial traffic stop was lawful. We review de novo whether the facts adequately support a traffic stop, and we review the district court's findings of fact for clear error. *United States v. Drake*, 543 F.3d 1080, 1087 (9th Cir. 2008). Here, Trooper Murwin testified that he observed Appellants' vehicle and estimated its speed to be approximately 80 miles per hour, which he confirmed using radar. He also testified that the posted speed limit in the area was 70 miles per hour. No objection was raised to this testimony. In light of this evidence, we agree with the district court that the initial stop of the vehicle was lawful. *See United States v. Choudhry*, 461 F.3d 1097, 1100 (9th Cir. 2006).

Appellants proceed to argue that the ensuing search of the vehicle rendered the duration of the traffic stop unreasonable. We review de novo whether a stop exceeds its proper duration, *United States v. Mayo*, 394 F.3d 1271, 1276 n.8 (9th Cir. 2005), inquiring whether law enforcement "pursu[ed] the investigation in a

3

diligent and reasonable manner," *Haynie v. County of Los Angeles*, 339 F.3d 1071, 1076 (9th Cir. 2003) (internal quotation marks and citation omitted).

According to Murwin's testimony, neither Cruz-Castro nor Velasquez produced driver's licenses when prompted, and Cruz-Castro did not have any money or credit cards in his possession. Cruz-Castro could not explain with reasonable precision where they were going or whom they were meeting, and he appeared abnormally nervous—his pulse was visibly protruding from his neck and his eyes were twitching. Murwin obtained Cruz-Castro's consent to search the vehicle, and while searching the trunk Murwin noticed a spilled white powder that he suspected to be a controlled substance. Murwin proceeded to search the passenger compartment, opened a backpack behind the passenger seat, and discovered what appeared to be heroin and cocaine base. By this time, the total duration of the stop was 16 minutes. In light of the suspicious circumstances that continued to unfold during the encounter, we conclude that Murwin's brief extension of the traffic stop in order to dispel his suspicions was reasonable. *See Mayo*, 394 F.3d at 1276 (concluding that "[t]he period of detention was permissibly extended [to forty minutes] because new grounds for suspicion of criminal activity continued to unfold").

4

Appellants further contend that Murwin unlawfully coerced Cruz-Castro's consent to search the vehicle. Whether consent is obtained through coercion depends on the totality of the circumstances and is a question of fact we review for clear error. *United States v. Enslin*, 327 F.3d 788, 792 (9th Cir. 2003). Five factors are often the focus of this inquiry: (1) whether the suspect was in custody; (2) whether officers had their guns drawn; (3) whether *Miranda* warnings were given; (4) whether the suspect was notified that he or she could refuse consent; and (5) whether the suspect was told that a search warrant could be obtained. *United States v. Patayan Soriano*, 361 F.3d 494, 502 (9th Cir. 2004). When applied to the facts of this case, the majority of these considerations weigh in favor of voluntariness, and the additional circumstances noted by Cruz-Castro do not persuasively suggest that his ability to refuse consent was overborne. The district court did not clearly err in finding that Cruz-Castro's consent was voluntary.

Finally, Appellants argue that the scope of Cruz-Castro's consent was limited to the trunk of the vehicle. We review for clear error whether a search fell within the scope of consent. *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1131 (9th Cir. 2005). After learning that Cruz-Castro was the owner of the vehicle, Murwin testified that he asked Cruz-Castro "if [he] could search the vehicle" and that Cruz-Castro "sa[id] yes" and stated that Murwin "wouldn't find

5

anything." A video of the encounter shows that Murwin searched the trunk of the vehicle and then indicated to Cruz-Castro that he would proceed to search the passenger compartment. Murwin testified that he looked in the backseat, saw a backpack, and motioned to Velasquez that he wanted to look inside. At no point did Appellants object, and the video indicates that they had ample opportunity to do so. "Failure to object to the continuation of a vehicle search after giving general consent to search is properly considered as an indication that the search was within the scope of the initial consent." *United States v. Cannon*, 29 F.3d 472, 477 (9th Cir. 1994) (internal quotation marks and citation omitted). The district court did not clearly err in concluding that Cruz-Castro's consent included the passenger compartment and closed containers therein.[1]

## Trial Testimony

Velasquez contests the district court's decision to allow Murwin to testify that Velasquez had stated, "I do this because I make more money here than I make in the Honduras." Velasquez also challenges the admission of expert testimony from DEA Special Agent Michael Bakios, who opined regarding whether certain

---

[1] To the extent that Velasquez argues that Cruz-Castro's consent is "not controlling" as to him, we deem this argument waived since it was raised for the first time in his reply brief. *United States ex rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1199 n.1 (9th Cir. 2009).

characteristics of narcotics would indicate that they were intended for distribution. We review these evidentiary decisions for an abuse of discretion. *See United States v. Higuera-Llamos*, 574 F.3d 1206, 1209 (9th Cir. 2009); *see also United States v. Curtin*, 588 F.3d 993, 995 (9th Cir. 2009).

As to Velasquez's statement, the probative value of this evidence was diminished by the language barrier between Velasquez and Murwin and the ambiguity of the word "this." These shortcomings, however, do not render the evidence inadmissible. *Cf., e.g.*, *United States v. Warren*, 25 F.3d 890, 895 (9th Cir. 1994); *United States v. Eubanks*, 591 F.2d 513, 518 (9th Cir. 1979). In light of the other evidence adduced at trial and the circumstances under which the statement was made, the jury could permissibly infer from the statement that Velasquez was engaging in some form of commerce, to wit, narcotics trafficking. The district court did not abuse its discretion by finding the statement to be probative of a fact at issue and not substantially outweighed by the risk of unfair prejudice.

Regarding Bakios's testimony, Velasquez asserts that the special agent's lack of personal knowledge about the specific narcotics recovered from the vehicle rendered his testimony irrelevant and unhelpful to the trier of fact. These arguments are not well-taken; based on his experience, Bakios testified that a

7

person in possession of 220 grams of cocaine base and 123.5 grams of heroin would likely intend to distribute the narcotics. He also explained the practice of distributing heroin in 25-gram "pieces" in plastic bags. The jury could readily apply Bakios's testimony to determine whether the narcotics in this case were intended for distribution rather than personal use. The presentation of this testimony in the form of answers to hypothetical questions did not render it irrelevant or unhelpful. *See United States v. Younger*, 398 F.3d 1179, 1190 (9th Cir. 2005).

**Safety-Valve Treatment at Sentencing**

Both Cruz-Castro and Velasquez contend that the district court erred in denying them safety-valve treatment. A defendant has the burden of proving by a preponderance of the evidence that he or she qualifies for the safety valve, *United States v. Zakharov*, 468 F.3d 1171, 1181 (9th Cir. 2006), and we review for clear error the district court's factual determination that a particular defendant is ineligible, *United States v. Mejia-Pimental*, 477 F.3d 1100, 1103 (9th Cir. 2007).

The district court denied safety-valve treatment to Cruz-Castro because he did not demonstrate that he fully debriefed to the government. *See* 18 U.S.C. § 3553(f)(5). To make this determination, the district court relied on the testimony of DEA Special Agent Karen Rossi, who had debriefed Cruz-Castro and concluded

8

that he did not divulge his "total knowledge of the transaction." The district court also relied on certain evidence presented at trial. Although Bakios had testified that drug couriers typically know "very, very little," and Rossi conceded the "possib[ility]" that Cruz-Castro had acted solely at the direction of Velasquez, this evidence was far from compelling. The district court did not clearly err in finding Cruz-Castro ineligible for safety-valve treatment. Furthermore, because Cruz-Castro received the mandatory minimum sentence, his contentions regarding minor-role and acceptance-of-responsibility adjustments are moot. *See United States v. VanDoren*, 182 F.3d 1077, 1083 (9th Cir. 1999).

As to Velasquez, he acknowledges that safety-valve treatment is precluded where a defendant has more than one criminal-history point, *see* 18 U.S.C. § 3553(f)(1), but contends that the district court "did not 'charge' [his] criminal history points against" him. This argument misinterprets the record; although the district court found Velasquez's criminal-history category to overstate the severity of his prior convictions, the court did not remove Velasquez's criminal-history points, nor would it have had authority to do so. *See United States v. Hernandez-Castro*, 473 F.3d 1004, 1008 (9th Cir. 2007). The district court properly denied safety-valve treatment to Velasquez.

**AFFIRMED**.