**UNITED STATES of America**

**v.**

**Anthony Butler COMEGYS, Appellant.**

**No. 11–3630.**

United States Court of Appeals,
Third Circuit.

Submitted under Third Circuit
LAR 34.1(a) Oct. 29, 2012.

Filed Nov. 14, 2012.

Ilana H. Eisenstein, Esq., Office of United States Attorney, Wilmington, DE, for United States of America.

Christopher G. Furlong, Esq., Media, PA, for Appellant.

Before: SLOVITER, AMBRO and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

Anthony Butler Comegys appeals a judgment of the United States District Court for the District of Delaware, in which a jury convicted Comegys for conspiracy to distribute 500 grams or more of cocaine and distribution of 500 grams or more of cocaine. The Court sentenced him to 120 months' imprisonment. Comegys's appeal presents three contentions—the District Court erred when it: (1) failed to suppress evidence seized after a traffic stop; (2) failed to grant Comegys's motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Proce-

dure; and (3) admitted prejudicial information pertaining to a prior investigation of Comegys for matters unrelated to the case before the District Court. We disagree, and we will affirm the judgment of the District Court.

### I.

Because we write primarily for the parties, who are familiar with the facts and the proceedings in this case, we will revisit them only briefly.

### A.

During the District Court's evidentiary hearing on Comegys's motion to suppress evidence, the Government called Agent Rhett Campbell, who testified that on August 12, 2008 he stopped an automobile driven by Cassandra Norton, in which Comegys was riding as a passenger. Agent Campbell observed that the car was traveling at 76 miles per hour in a 70 miles-per-hour zone, and that the car slowed down and moved from the passing lane to the slow lane just after passing his marked patrol car. This lane change, according to Agent Campbell, was an unusual change in driving behavior that contributed to his decision to stop the car. Agent Campbell asked Norton to give him her license and step out of the car, leaving Comegys in the passenger seat. Norton admitted that she was speeding and Agent Campbell questioned Norton regarding her travel itinerary, which seemed improbable to Agent Campbell based on the distances covered and the direction of travel. Subsequently, Agent Campbell returned to the car to speak with Comegys, who according to Agent Campbell seemed nervous and panicked as he searched for the car-rental agreement. Comegys provided Agent Campbell with a different travel itinerary.

While Agent Campbell waited for the license, tag and rental information to be processed, he resumed his questioning of Norton, asking her if there was anything illegal in the car, such as drugs or guns. Norton gave oral consent to Agent Campbell to search the car. At this point, the traffic stop had lasted approximately 10 minutes. Agent Campbell asked Comegys about his prior arrest on charges of cocaine possession, and asked Comegys for permission to search the car. Comegys informed Agent Campbell that there were no drugs or weapons in the car, and orally consented to an automobile search. During his search of the passenger compartment, Agent Campbell found $17,400 in cash inside Norton's purse. Norton claimed that she won the money playing a Las Vegas slot machine in Comegys's presence; Comegys, however, stated that Norton won the money playing roulette.

Approximately 21 minutes after initiating the traffic stop, Agent Campbell's partner arrived on the scene with consent-to-search forms, which Comegys and Norton signed, granting broad permission "to search the ... vehicle ... including any luggage, containers, and contents of all." App. I–12. The forms contained clear language stating that Norton and Comegys had the right to refuse to consent to the search. Agent Campbell found a vacuum food-sealing machine, Saran Wrap and plastic vacuum sealer bags in the trunk. He became increasingly suspicious that Norton and Comegys were involved in drug smuggling upon this discovery, as these items are frequently used by drug smugglers to avoid detection by drug-sniffing dogs. While searching luggage in the trunk, Agent Campbell discovered a pair of jeans and searched its pockets, revealing a receipt and confirmation slip for a U.S. Postal Service Priority Mail package, shipped from El Paso to Delaware and dated one day before the traffic stop.

Agent Campbell photographed the receipt and confirmation slip and requested a drug-detecting K–9 unit, and returned the receipt and confirmation slip without notifying Comegys or Norton. Agent Campbell also found a new toaster, not in its box, in the trunk of the car.

When the K–9 unit arrived approximately one hour and 51 minutes after the initial stop, the drug-sniffing dog alerted to the presence of drug odor on the $17,400 in cash and the vacuum sealer box. Agent Campbell seized the suspicious items and issued Norton a speeding citation and seizure form for the property. The total duration of the stop was three hours and six minutes. Delaware postal inspectors obtained and executed a federal search warrant for the parcel connected to the postal receipt and confirmation slip. The parcel contained three kilograms of cocaine wrapped in Saran Wrap, sealed in a vacuum bag, and hidden in a toaster box.

Comegys filed a motion to suppress the evidence and statements obtained during the traffic stop. The District Court concluded that Campbell's recitation of the facts surrounding the traffic stop was credible, and denied Comegys's motion to suppress.

### B.

At trial, in addition to the evidence presented at the prior evidentiary hearing regarding the traffic stop and the subsequent tracing of the parcel, the Government presented additional evidence connecting Comegys and his co-conspirators to the parcel. Comegys gave a cell-phone number to the rental car agency when he picked up the car in New Jersey, and investigators linked that phone number to various communications among the co-conspirators before, during, and after delivery of the parcel. Videotape from the origin

post office in El Paso at the time listed on the postal receipt showed an individual mailing a large parcel, and the Government asserted that the individual was Comegys.[1] An individual at an address matching closely the address on Comegys's Delaware driver's license used the confirmation number on the postal receipt to track the parcel's progress on the U.S. Postal Service website. In addition, Maryland State Police Officer Timothy McDonald testified and presented a photocopy of Comegys's Texas driver's license with an El Paso address matching closely the return address listed on the intercepted parcel. McDonald obtained the photocopied license six months prior to the traffic stop from a hotel in Maryland, while he was involved in an investigation relating to Comegys.

At the close of the Government's case, Comegys moved for a judgment of acquittal pursuant to Rule 29. The Court reserved ruling on the motion, and Comegys rested without presenting evidence. The jury found Comegys guilty on all charges. Comegys filed a reserved motion for judgment of acquittal pursuant to Rule 29, which the Court denied. Finally, Comegys filed a motion for reconsideration of the Court's order denying his previous motion to suppress, which the Court denied. The Court imposed a sentence of 120 months? imprisonment, and Comegys timely appealed.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## III.

The District Court did not err in denying Appellant's motion to suppress physical evidence and statements obtained during the traffic stop in Tennessee. In our review of the District Court's denial of a suppression motion, "we review its factual findings for clear error and exercise plenary review over its legal determinations." *United States v. Shields*, 458 F.3d 269, 275–276 (3d Cir.2006) (citation omitted).

## A.

■ Under the Fourth Amendment, individuals are protected "against unreasonable searches and seizures." U.S. Const. Amend. IV. A traffic stop constitutes a "seizure" under the Fourth Amendment, "even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) (citations omitted). As this Court has held, the reasonable suspicion standard from the Supreme Court's decision in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), "applies to routine traffic stops." *United States v. Delfin–Colina*, 464 F.3d 392, 397 (3d Cir.2006). Accordingly, "a traffic stop will be deemed a reasonable 'seizure' when an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop." *Id.* at 397–398.

As Comegys concedes, Norton was exceeding the speed limit prior to the traffic

---

1. Appellant argues that the person shown in the videotape "appeared much larger than Comegys." Brief for Appellant 25. The District Court, in its Memorandum Opinion denying Comegys's motion for judgment of acquittal, notes that "[g]iven the other evidence presented and the amount of time that had passed between the mailing of the package and the trial, the jury certainly could reasonably conclude that the individual in the video is Comegys." App. I–24.

stop. Agent Campbell therefore had reasonable suspicion, based on the reading on his radar gun, that Norton was violating a traffic law at the time of the stop. Nevertheless, Comegys contends that Campbell's actual, subjective motivation for stopping the automobile was not to enforce the 70 miles-per-hour speed limit, but rather to investigate what he regarded as Norton's unusual change in driving behavior. He argues that the speeding violation was mere pretext for Campbell to stop the vehicle, and that this subjective motivation negates the reasonable suspicion created by Norton's violation of the speed limit. Notwithstanding Comegys's arguments to the contrary, this case clearly comes within the Supreme Court's teachings in *Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), which rejects the idea that "the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved." *Id.* Regardless of Campbell's actual, subjective intent, he had reasonable suspicion to stop Norton's automobile because she was exceeding the speed limit. Accordingly, we agree with the District Court that the initial traffic stop was valid.

### B.

■ Comegys contends also that he was unlawfully seized because the "lengthy detention" that he experienced was "presumptively unreasonable." Brief for Appellant 15. We do not agree. After a valid traffic stop, "an officer who develops a reasonable, articulable suspicion of criminal activity may expand the scope of inquiry beyond the reason for the stop and detain the vehicle and its occupants for further investigation." *United States v. Givan,* 320 F.3d 452, 458 (3d Cir.2003).

Within minutes of the initial traffic stop, Norton provided Agent Campbell with a travel itinerary that seemed improbable; shortly thereafter, Comegys provided a different improbable itinerary and appeared nervous while searching for the car rental agreement. Ten minutes after Agent Campbell pulled the car over, while waiting for processing of the license, tag, and rental information, both Norton and Comegys gave oral consent to Campbell to search the car. Minutes later, both Norton and Comegys signed written consent forms, and neither Norton nor Comegys ever withdrew their consent to search. As the District Court noted, although the stop lasted more than three hours, just thirty minutes after the initial stop Agent Campbell discovered the cash, vacuum sealer, Saran Wrap and vacuum sealer bags. Within one hour, Agent Campbell discovered the Post Office receipt and confirmation slip in the jeans pocket. These discoveries justified extending the stop to allow for a drug-detecting K–9 to assist in the search. As the District Court observed, "from that point, the duration of the stop can be attributed mostly to the time that it took for the K–9 to [sic] unit to arrive at the scene and perform its search." App. I–17. The duration of the traffic stop provides no grounds for suppression, and we reject Comegys's argument to the contrary.

### C.

■ Comegys contends that Agent Campbell exceeded the scope of his consent when he searched in the jeans pockets and found the Post Office receipt and confirmation slip. He argues that because Campbell specifically asked about drugs and weapons in the car prior to the search, consent was limited to a search for those items alone. We reject this argument completely.

"[A] search conducted pursuant to consent is one of the specifically established

exceptions to the warrant requirement." *Givan,* 320 F.3d at 459. A court is to measure the scope of a suspect's consent using an objective standard to determine what a reasonable person would have understood from the exchange between the officer and the defendant. *Florida v. Jimeno,* 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991).

Comegys and Norton provided oral consent to Agent Campbell before he began his search, and both Comegys and Norton signed a written consent form which gave Campbell broad permission "to search the ... vehicle ... including any luggage, containers and contents of all." App. I–12. We agree with the District Court that a reasonable person would not understand that the exchange between Agent Campbell, Norton and Comegys created a limited scope of consent. Neither Comegys nor Norton limited their consent or attempted to withdraw consent at any time during the stop, and their written consent to a broad search further supports the District Court's conclusion.

### D.

■ Comegys contends also that his consent to search was involuntary. This is a new contention, which Comegys failed to raise at any point during the proceedings in the District Court. "[A] suppression argument raised for the first time on appeal is waived (*i.e.,* completely barred) absent good cause." *United States v. Rose,* 538 F.3d 175, 182 (3d Cir.2008) (alteration in original). When a defendant files a suppression motion in the District Court, but fails to include an issue that he raises on appeal, this waiver rule applies. *Id.* Although Comegys attempts to embed his new voluntariness argument within his challenge to the scope of consent, we conclude that the voluntariness argument is a new one. Absent good cause, we will not

consider it, and Comegys has not provided any explanation for his failure to raise the voluntariness issue. Accordingly, we hold that this argument is waived.

### IV.

■ The District Court correctly denied Comegys's Rule 29 motion for judgment of acquittal, because the evidence at trial was sufficient to sustain the jury's verdict. We review this issue de novo, examine the totality of the evidence, and interpret the evidence in the light most favorable to the party prevailing at trial. *United States v. Starnes,* 583 F.3d 196, 206 (3d Cir.2009). "Appellants have a heavy burden to carry: [w]e will overturn a verdict only if no reasonable juror could accept evidence as sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt." *United States v. Bryant,* 655 F.3d 232, 240 (3d Cir.2011) (alteration in original) (internal quotation marks and citations omitted).

Comegys attacks the jury's acceptance of the evidence establishing that he knew that the parcel he mailed contained cocaine, and the evidence that there was a nexus between Comegys and the other participants in the conspiracy. Having considered the evidence presented at trial, we agree completely with the District Court that the Government presented substantial evidence to support the jury's finding that Comegys was aware of the parcel's contents and that he knowingly participated in the conspiracy. Accordingly, we hold that the District Court correctly denied Comegys's Rule 29 motion.

### V.

■ Comegys contends that the District Court erred in allowing Officer McDonald to state that he worked at the "Drug Enforcement Administration" in Maryland,

and in allowing the Government to inquire into whether McDonald acquired Comegys's Texas driver's license while he was "involved in an investigation relating to" Comegys in February 2008, six months prior to the events at issue in the trial. He argues that "one could easily perceive and conclude" that McDonald was investigating Comegys for drug-related offenses because McDonald stated that he was assigned to a drug division and worked at the Drug Enforcement Administration. Brief for Appellant 29. He asserts that McDonald's testimony violated Rule 404(b) of the Federal Rules of Evidence, and that the testimony was unfairly prejudicial pursuant to Rule 403 of the Federal Rules of Evidence.

As Comegys concedes in his brief, his lawyer at trial failed to raise a formal objection to McDonald's testimony. Brief for Appellant 8. Accordingly, we review for plain error only, and Comegys must demonstrate an error, that is plain, that affects substantial rights. *United States v. Moore*, 375 F.3d 259, 262 (3d Cir.2004) (citations omitted). An error affects substantial rights when it "affect[s] the outcome of the district court proceedings." *United States v. Shavers*, 693 F.3d 363, 395 (3d Cir.2012) (internal quotation marks and citations omitted). If Comegys can demonstrate that a plain error affected substantial rights, we "may then exercise [our] discretion to notice a forfeited error, but only if . . . the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Moore*, 375 F.3d at 262 (internal quotation marks and citation omitted).

At the beginning of McDonald's testimony, the Government asked him where he worked, and he stated "Drug Enforcement Administration in Queen Annes County, Maryland." App. III –74. The Government subsequently asked: "[H]ow long have you been with Queen Annes County, Maryland, you said at the Drug Division?" He responded: "I am with the Maryland State Police. I have been with the State Police for 16 years." App. III–74–75. Next, the Government asked McDonald whether on February 14, 2008 he was "involved in an investigation relating to Anthony Butler Comegys[.]" App. III–75. McDonald responded affirmatively. At this point, Comegys's lawyer requested a sidebar where he expressed surprise at this testimony, and told the District Court that he was concerned that it might come within the ambit of Rule 404(b). The Court permitted testimony to proceed, and the Government asked again, "I had inquired whether you were involved in an investigation on February 14th relating to Anthony Butler Comegys." App. III–76. McDonald again responded affirmatively, and explained how he obtained a copy of Comegys's Texas driver's license from a Maryland hotel. At no point during McDonald's testimony did he discuss the purpose of his investigation.

Admission of McDonald's testimony was not plain error. Rule 404(b) prohibits introduction of "evidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Comegys argues that the Government identified McDonald as a drug division police officer conducting an investigation to "demean [Comegys's] character and highlight for the jury that [Comegys] was the subject of a drug investigation in Maryland." Brief for Appellant 28. We have held that testimony suggesting that a defendant was a target of investigations for earlier, uncharged drug crimes, even if improper, does not rise to the level of plain error in violation of Rule 404(b). *United States v. Rivas*, 493 F.3d 131, 136–137 (3d Cir.2007) (noting that the "government at least suggested a possible

legitimate reason for the question . . . indicating that the error was not plain"). The testimony in *Rivas* explicitly named the defendant as the target of a drug investigation, but nevertheless was held not to be plain error. Here, McDonald did not clearly name Comegys as a target of the investigation, he said nothing about the investigation implying that Comegys had committed drug-related crimes, and the testimony was used to establish how McDonald came into possession of a copy of Comegys's Texas driver's license. McDonald's testimony fell far short of the testimony in *Rivas* held not to be plain error under Rule 404(b), and we therefore determine that there was no plain error here.

█ As Comegys combined his Rule 404(b) attack on McDonald's testimony with an argument that the testimony was unfairly prejudicial under Rule 403, we will briefly address this contention as well. Rule 403 states that "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice. . . ." McDonald's testimony had probative value: it disclosed the address listed on Comegys's Texas driver's license, and it established the context in which McDonald acquired the copy of the license. Comegys alleges that identifying McDonald as a drug-division police officer conducting an investigation relating to Comegys constituted unfair prejudice. Any danger of unfair prejudice from the testimony did not substantially outweigh its probative value, and certainly does not lead us to conclude that there was plain error under Rule 403. Accordingly, Comegys's contention that McDonald's testimony constituted plain error is without merit.

Moreover, Comegys's substantial rights were not affected; given the weight of evidence against Comegys and the limited nature of McDonald's testimony, we cannot say that the testimony affected the outcome of Comegys's trial. We hold that there was no plain error, and Comegys is not entitled to a new trial.

\*     \*     \*     \*     \*     \*

We have considered all of the arguments advanced by the parties and conclude that no further discussion is necessary. The judgment of the District Court will be AFFIRMED.