[J-81-2017] [MO: Donohue, J.]
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 9 MAP 2017 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court dated August 19, 2016 at No. |
| | : | 319 MDA 2015 affirming the |
| v. | : | Judgment of Sentence of the Centre |
| | : | County Court of Common Pleas, |
| | : | Criminal Division, dated January 23, |
| RANDY JESUS VALDIVIA, | : | 2015 at No. CP-14-CR-2234-2013 |
| | : | |
| Appellant | : | ARGUED: November 28, 2017 |

## CONCURRING AND DISSENTING OPINION

**JUSTICE TODD**                                    **DECIDED: October 17, 2018**

At issue in this appeal is whether Appellant Randy Jesus Valdivia's oral and written consent to allow police to search his vehicle, which ultimately led to the discovery of 20 pounds of marijuana valued at $160,000, was voluntary; whether the scope of Appellant's consent properly included a canine sniff; and whether the execution of such a search 40 minutes after his consent was given rendered it invalid. For the reasons that follow, considering the circumstances surrounding the consent and search, and viewing the evidence in the light most favorable to the Commonwealth, as we must, I agree with the majority that Appellant's consent was voluntary, but dissent regarding its conclusion that a canine search was outside the scope of Appellant's consent. Moreover, I would also conclude that, in these circumstances, the canine sniff, conducted within 40 minutes of Appellant's agreeing to a search of his vehicle, was within the scope of his consent.

Pursuant to the protections embodied in the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution, before the state may conduct a search, a

warrant that is supported by probable cause is required. U.S. Const, amend IV; Pa. Const., art. I, § 8; *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *Commonwealth v. Reid*, 811 A.2d 530, 544 (Pa. 2002). While the necessity of a search warrant is the bedrock means of protecting the privacy interests of our citizens in their persons, homes, and property, a warrant is not required when an individual, with proper authority, voluntarily consents to a search. *Reid*, 811 A.2d at 544. Thus, a valid consent acts as an exception to the warrant requirement. *Commonwealth v. Cleckley*, 738 A.2d 427, 429 (Pa. 1999).

The practice of law enforcement seeking consent to facilitate a search is perfectly acceptable. Indeed, as explained by the United States Supreme Court, such agreements diminish inferences of coercion:

> In a society based on law, the concept of agreement and consent should be given a weight and dignity of its own. Police officers act in full accord with the law when they ask citizens for consent. It reinforces the rule of law for the citizen to advise the police of his or her wishes and for the police to act in reliance on that understanding. When this exchange takes place, it dispels inferences of coercion.

*United States v. Drayton*, 536 U.S. 194, 207 (2002). Moreover, it puts in the hands of the citizen not only the power to allow — or not allow — a search, but it permits the individual to define the contours of the search. *See* Luna, *Sovereignty and Suspicion*, 48 Duke L.J. 789, 841 (1999) ("If an individual consents to a search or seizure, she is exercising primary authority. The right to exclude necessarily implies the right to include, and as long as the final determination is made by the person whose body or home is being searched, sovereignty remains with the individual."). Thus, while there is a "pertinent psychological dynamic based upon the relative positions of authority as between the officer and a citizen-subject, and an immediately-preceding exercise of the officer's

authority," *Commonwealth v. Strickler*, 757 A.2d 884, 898 (Pa. 2000), and while a citizen's consent to a warrantless search by police is indeed a significant act, sacrificing constitutionally-enshrined protections, ultimately, the individual, not the state, is in control of the process — its inception, its contours, and its termination — and the state must scrupulously honor any refusal of, limitation on, or revocation of, such a consent.

While a search by consent is acceptable, such consent is of momentous import, and so certain protections must be ensured before a consensual search will be deemed to be valid. As noted by the majority, to pass constitutional muster, the consent must be sought during a lawful interaction with police; the consent must be voluntary; and the search must be within the scope of the consent. *Reid*, 811 A.2d at 544, 548. Specifically, the prosecution must initially establish that the consent was given during a legal police interaction, or, if given during an illegal seizure, that it was not a result of the illegal seizure. *Id.* at 544. Moreover, the consent must be voluntary. *Id.* Voluntariness of consent is determined under the totality of the circumstances surrounding the consent. *Id.* at 548. Further, in establishing a voluntary consent, the Commonwealth is not required to prove knowledge of the right to refuse a consent search. *Cleckley*, 738 A.2d at 432-33.[1]

The primary focus of this appeal, however, is on the scope of Appellant's consent. For a valid consent search, the scope of the search must be limited to that agreed to by the consenting party. *Id.* ("When an official search is properly authorized, the scope of the search is limited by the terms of its authorization."). *Reid*, 811 A.2d at 544, 548. The

---

[1] While, in the courts below, Appellant contested the legality of the seizure, he does not do so on appeal to our Court. Thus, we accept for purposes of this appeal that the consent search was conducted during a lawful police interaction. Furthermore, while somewhat intermingling his arguments, Appellant maintains that he did not voluntarily consent to the search. I join the majority's conclusion that there is no support for Appellant's assertion that his consent was not voluntarily given. Majority Opinion at 11-13.

"fundamental point is that the consenting party, either expressly or by implication, may place conditions upon the consent involving such matters as the time, duration, physical scope, or purpose of the search being consented to." 4 Wayne R. LaFave, *Search and Seizure,* § 8.1, 9 (5th ed. 2017). More specifically, the standard for determining the scope of a valid consent "is based on an objective evaluation of what a reasonable person would have understood by the exchange between the officer and the person who gave the consent." *Reid*, 811 A.2d at 549; *Florida v. Jimeno*, 500 U.S. 248, 251 (1991).[2] Significantly, any conclusion reached regarding the proper scope of a consent is determined by consideration of the totality of the circumstances. *Reid*, 811 A.2d at 548-49; *Jimeno*, 500 U.S. at 249.[3] More specifically, as discussed in more detail below, the

---

[2] Furthermore, the consent at issue in this appeal involves a canine search of a vehicle. The United States Supreme Court has determined that a canine "sniff" is not a search pursuant to the Fourth Amendment to the United States Constitution. *United States v. Place*, 462 U.S. 696, 707 (1983). Yet, our Commonwealth's Constitution, in certain areas, provides our citizens greater rights than under the federal charter. *See, e.g., Commonwealth v. Edmunds*, 586 A.2d 887, 894 (Pa. 1991) ("the federal constitution establishes certain minimum levels which are 'equally applicable to the [analogous] state constitutional provision.' However, each state has the power to provide broader standards, and go beyond the minimum floor which is established by the federal Constitution." (citations omitted)). Indeed, it has now been well established for over 30 years that canine sniffs constitute searches under Article I, Section 8 of the Pennsylvania Constitution. *Commonwealth v. Johnson*, 530 A.2d 74, 79 (Pa. 1987); *see also Commonwealth v. Rogers*, 849 A.2d 1185, 1190 (Pa. 2004); *Commonwealth v. Martin*, 626 A.2d 556, 559 (Pa. 1993).

Appellant, however, as explained by the majority, does not suggest that Article I, Section 8 of the Pennsylvania Constitution provides greater protections for Pennsylvania citizens in the area of consent searches (beyond the foundation that a canine sniff constitutes a search for purposes of state constitutional law). Moreover, our case law in this area has relied exclusively on federal Fourth Amendment decisions. *See*, *e.g.*, *Strickler*, 757 A.2d at 902. Thus, *arguendo*, the law of consent is the same under both our federal and state charters.

[3] The majority asserts that the scope of consent inquiry does not consider the totality of the circumstances, but, rather, is limited to "the circumstances at the time the exchange between the officer and the suspect occurs," or seemingly, to more than one "exchange." Majority Opinion at 22-23. Respectfully, and contrary to the majority's protestations,

totality of all the circumstances include both those at the initial time of the consent, as well as any subsequent exchange which informs the permissible scope of the consent.

---

*Jimeno* and *Reid* support my view. See *Jimeno*, 500 U.S. at 249 ("The Fourth Amendment is satisfied when, *under the circumstances*, it is objectively reasonable for the officer to believe that the scope of the suspect's consent permitted him to open a particular container within the automobile.") (emphasis added)); *Reid*, 811 A.2d at 549 (determining scope of consent "based on an objective evaluation of what a reasonable person would have understood by the exchange between the officer and the person who gave the consent" by examining various post-consent conduct after exchange with officer, and reasoning that defendant "did not make any indication to the troopers either during or after the search that he wanted them to stop searching the truck;" and "[g]iven that [defendant] did not at any point revoke his consent to allow the police to search his truck and that Trooper Scott searched the truck within a relatively short time span after [defendant] provided his consent, we conclude that Trooper Scott's search was within the scope of [defendant's] consent.").

Further, a myriad of decisions rendered under the Fourth Amendment support the same. *See, e.g.*, *United States v. Stierhoff*, 549 F.3d 19, 23 (1st Cir. 2008) ("Typically, courts look beyond the formal wording of the consent itself to the totality of the circumstances that inform the meaning of those words in a given situation"); *Reedy v. Evanson*, 615 F.3d 197, 225 (3rd Cir. 2010) ("Consent is 'determined from the totality of the circumstances . . .[and] we must examine the circumstances surrounding [the] consent'"); *United States v. Garcia*, 604 F.3d 186, 190 (5th Cir. 2010) ("General consent to search a vehicle does not, however, give an officer *carte blanche* over the vehicle. . . . A search must still be reasonable, given the totality of the circumstances"); *United States v. Adams*, 583 F.3d 457, 465 (6th Cir. 2009) ("In its suppression ruling, the district court properly recognized that [occupant's] consent to search the motel room 'does [not] necessarily include everything in it[, a]nd that guests to a motel room still may have a privacy interest in things they brought with them, depending on the totality of the circumstances.'"); *United States v. Thurman*, 889 F.3d 356, 368 (7th Cir. 2018) ("Whether a search extends beyond the scope of consent 'is a question of fact to be determined from the totality of all the circumstances.'"); *United States v. Beckmann*, 786 F.3d 672, 678 (8th Cir. 2015) (in determining scope of consent, "[r]easonableness is measured in objective terms based on the totality of the circumstances"); *United States v. Mines*, 883 F.2d 801, 803 (9th Cir. 1989) ("This court has held that the question of whether a search exceeds the scope of a suspect's consent is a factual one, to be determined on the basis of the totality of the circumstances"); *United States v. Price*, 925 F.2d 1268, 1272 (10th Cir. 1991) ("a court should consider the totality of the circumstances to determine the scope of consent"); *United States v. Blake*, 888 F.2d 795, 798 (11th Cir. 1989) ("whether there were any limitations placed on the consent given and whether the search conformed to those limitations is to be determined by the totality of the circumstances"); *See also infra* at pp. 12-14.

Finally, applying the proper standard and scope of review in suppression matters is, in my view, critical to this matter. As thoroughly explicated by Justice Baer in *In re L.J.*, 79 A.3d 1073, 1079-80 (Pa. 2013), the role of the appellate court is "to determine whether the record supports the suppression court's factual findings, and whether the suppression court's findings are free from legal error. . . . Scope of review . . . may be divided into two components: the subject matter of the review, and the extent of the record that the appellate court consults when conducting that review. As for the subject matter, our scope of review is limited to the factual findings and legal conclusions of the suppression court." *Id.* Regarding the record, "we are limited to considering only the evidence of the prevailing party, and so much of the evidence of the non-prevailing party as remains uncontradicted when read in the context of the record as a whole." *Id.* Thus, here, we consider the evidence in the light most favorable to the Commonwealth and any uncontradicted evidence of record.

With this legal background in hand, Appellant seemingly forwards two arguments why the consent search was invalid. First, he maintains that a reasonable person would not consider a canine sniff to be part of a generalized consent to search — that he envisioned only a hand search of his vehicle — thus, the use of a canine to search his vehicle was beyond his consent. Second, he claims that, in any event, the 40 minutes he waited for the canine unit to arrive was beyond that to which a reasonable person should be subjected, and, thus, such a delayed search was beyond the scope of his consent and, therefore, invalid. I address these assertions *seriatim*.

Whether a canine search is one a reasonable person would expect to be part of a general consent to search has been the subject of debate and varied conclusions by a number of courts. As early as 1976, the Ninth Circuit Court of Appeals noted that canines had "long been used" by police, and that the ability to detect contraband led to the training

of and use of dogs to search for drugs. *United States v. Solis*, 536 F.2d 880, 882 (9th Cir. 1976); *United States v. Fulero*, 498 F.2d 748, 749 (D.C. Cir. 1974) (*per curiam*) (marijuana-sniffing canine used regularly since early 1970s). Moreover, our Court has concluded that dog sniffs are minimally intrusive relative to other modes of search. *See Johnston*, 530 A.2d at 79-80 ("[A] canine sniff-search is inherently less intrusive upon an individual's privacy than other searches such as wiretapping or rummaging through one's luggage; it is unlikely to intrude except marginally upon innocent persons."); *Rogers*, 849 A.2d at 1199 (Saylor, J., concurring) ("canine sniffs are less intrusive than full-blown searches"); *United States v. Place*, 462 U.S. 696, 707 (1983) (opining that a dog sniff "does not require opening the luggage" and does not "expose noncontraband items that otherwise would remain hidden from public view, as does, for example, an officer's rummaging through the contents of the luggage;" rather, it "discloses only the presence or absence of narcotics," protecting the suspect from "the embarrassment and inconvenience entailed in less discriminate and more intrusive investigative methods").

While canine searches may be minimally intrusive, and of long vintage, courts have come to different conclusions regarding whether a reasonable person would expect the use of a dog as part of a general consent search. *Compare, e.g.*, *State v. Becerra*, 366 P.3d 567, 571 (Ariz. Ct. App. 2016) ("The reasonable person in the United States would not be surprised or find any novelty in a law enforcement officer's use of a K-9, just as her or she might use a flashlight, to search a vehicle for drug contraband."), and *United States v. Coney*, 456 F.3d 850, 858-59 (8th Cir. 2006) (canine search upheld even though no reference to drug-detection dog), *with State v. McLeod*, 664 So.2d 983, 984-85 (Dist. Ct. App. Fla. 1995) (finding consent did not encompass the use of a dog and that nothing in the surrounding circumstances suggested that it did), and *United States v. Gonzalez-Basulto*, 898 F.2d 1011, 1013 (5th Cir. 1990) (finding search did not exceed the scope of

defendant's consent, as he knew before arriving at checkpoint that police were using drug-sniffing dogs to examine vehicles and dogs were present on the scene before defendant gave his consent); and *United States v. Woods*, 445 F.Supp. 2d 1328, 1332-33 (M.D. Ala. 2006) (rejecting proposition that general consent included search by canine unit, but concluding that defendant spoke with dog-handler shortly after giving consent to search, and, thus, was aware of dog's presence and purpose). Our Superior Court in this matter came to the former conclusion, explaining that "[n]othing about a canine sniff strikes us as more intrusive than a vehicle search by humans, so when an individual consents to an official search of his vehicle, it is natural to assume that his consent includes both human and canine searches." *Commonwealth v. Valdivia*, 145 A.3d 1156, 1166 (Pa. Super. 2016).[4]

---

[4] The majority's assertion that the intrusiveness of the search is irrelevant to the determination of the proper scope of the consent to search, Majority Opinion at 18-19 & n.12, is contrary to foundational case law which confirms that an objective evaluation of what a reasonable person would have understood the scope of the search to be involves the degree of intrusiveness. Indeed, it is only logical that, because police are constrained by the bounds of reasonableness, the degree of intrusiveness is a factor in determining the scope of consent under a totality of the circumstances test. *See, e.g., Jimeno*, 500 U.S. at 251-52 ("It is very likely unreasonable to think that a suspect, by consenting to the search of his trunk, has agreed to the breaking open of a locked briefcase within the trunk, but it is otherwise with respect to a closed paper bag"); *United States v. Alverez*, 235 F.3d 1086, 1089 (8th Cir. 2000 ) (cutting of spare tire likely exceeded scope of consensual search in absence of probable cause); *United States v. Osage*, 235 F.3d 518, 520-21 (10th Cir. 2000) (explaining that court had previously hinted that a search could be "so invasive or destructive" as to go beyond the scope of the search consented to, and finding that consent to search bag did not permit opening of sealed cans, thereby rendering them useless and incapable of performing their function); *United States v. Blake*, 888 F.2d 795, 800 (11th Cir. 1989) (finding consent by defendants allowing police "to search their 'persons' could not, under the circumstances, be construed as authorization for the officers to touch their genitals in the middle of a public area in the Fort Lauderdale Airport," and, thus, upheld trial court's conclusion that "a general understanding of a request to search one's 'person' under the circumstances of this case simply did not lend itself to an interpretation that the officers were requesting to conduct a search as intrusive as the ones conducted here").

However, I do not believe it necessary for our Court to answer this broader, and more divisive, question as a general proposition. We must determine what was reasonably understood by the police and Appellant to be the scope of this search, in light of the totality of all the circumstances, viewed in the light most favorable to the Commonwealth as the prevailing party below. Considered in this context, based upon the circumstances in the evidentiary record, in my view, the use of a dog by the police was within the scope of the search to which Appellant consented.

First, Appellant gave an oral generalized consent to search and signed a written "Waiver of Rights and Consent to Search" form.[5] N.T. Omnibus Pretrial Motion Hearing, 8/8/14, at 17. Appellant never indicated that he was limiting his consent or the scope of the search so as to exclude a canine search. After giving a general consent to search, both orally and in writing, the officers offered that, as it was a cold evening, Appellant could wait in the trooper's vehicle. *Id.* at 19. Appellant accepted the offer and sat in the police cruiser with one of the troopers. The officers, however, did not perform a hand search of the vehicle immediately, or for the ensuing 40 minutes, and Appellant remained in the police cruiser with a trooper for this period of time. At no point did Appellant inquire as to the reason for the delay. The uncontested testimony established that Appellant's line of sight from his seat in the police cruiser allowed him to see the K-9 unit arrive, as

---

[5] The "Waiver of Rights and Consent to Search" form ("Waiver and Consent Form") was used by the Commonwealth during its questioning of Appellant at the suppression hearing, but was not entered into evidence by the Commonwealth. However, the form was included *by Appellant* as part of the Reproduced Record as it was an exhibit to the Commonwealth's Brief to the Superior Court. R.R. 170a. As a general rule, "matters not part of the record will not be considered on appeal." *Commonwealth v. Killian*, 680 A.2d 851, 852 n.5 (Pa. 1996) (noting with disapproval appellant's including of witnesses' statements favorable to him in the reproduced record, since they were not part of the original record, citing Pa.R.A.P. 2152 (reproduced record shall only contain parts of the original record)). Yet, here, Appellant included the form in the reproduced record, even though not favorable to him, and the Commonwealth did not object to such inclusion. The parties do not contest the existence and signing of the Waiver and Consent Form.

well as the dog "working around the vehicle and up front of the vehicle." *Id.* at 65. Yet, Appellant did not attempt to clarify his consent when he saw the K-9 unit arrive, nor did he inquire about the canine sniff, or seek to terminate the search, even though the canine search of the vehicle and packages were performed in his sight. *Id.* at 64-65, 82.

In my view, that Appellant consented, both orally and in writing, to a general search of his vehicle; that he made no inquiry regarding the lack of a hand search of his vehicle after his consent and for 40 minutes thereafter; that he sat in the police cruiser with an officer without making any comment or inquiry; and that he made no attempt to clarify his consent during the 40-minute period of police inaction (even with a trooper seated nearby), strongly suggests Appellant envisioned the consent to entail more than just a hand search. Moreover, Appellant's silence when he saw the K-9 unit arrive, and further silence when police commenced the search of the vehicle with a dog, are significant indications that such a search did not exceed the scope of his consent, and that he believed the breadth of his consented-to search included a canine sniff.

I view the majority's approach to determining the scope of consent as unfounded. As noted above, assessing the scope of consent standard is an objective evaluation of what a reasonable person would have understood by the exchange between the officer and the person who gave the consent, under the totality of all of the circumstances. *Reid*, 811 A.2d at 548, 549; *Jimeno*, 500 U.S. at 249.

Rather than considering the totality of the circumstances surrounding the exchange between the police and Appellant, the majority looks only to "the circumstances at the time the exchange between the officer and the suspect occurs." *See* Majority Opinion at 22. Thus, the majority narrows the examination, and, by doing so, the majority overlooks the failure to object or revoke consent as informing the inquiry, as, evidently, in the majority's view, such circumstances have no bearing on determining the scope of

consent. *See id.* ("[W]hen a search exceeds the scope of an individual's given consent, the search is illegal regardless of whether the individual objected or revoked his or her consent."). While a defendant may not have an affirmative duty to terminate a search if it exceeds his or her envisioned scope, it is beyond peradventure that a defendant's inaction is a factor to be considered in determining the scope of a consented-to search. The majority's *sub silento* reformulation of the established construct is manifestly contrary to federal and Pennsylvania jurisprudence, as well as scholarship. Indeed, federal and Pennsylvania case law is legion that one's acquiescence or silence after consent is a legitimate factor in considering the scope of an individual's consent.

Specifically, our Court has been clear that actions (or inaction) after the verbalization of consent are relevant factors in determining whether a search is impermissibly broad. *See Commonwealth v. Smith*, 77 A.3d 562, 573 (Pa. 2013) (that defendant "willingly went to the hospital and participated in the blood draw" indicated consent was not exceeded); *Reid*, 811 A.2d at 549 (that defendant "did not make any indication to the troopers either during or after the search that he wanted them to stop searching the truck," and that defendant "did not at any point revoke his consent to allow the police to search his truck and that Trooper Scott searched the truck within a relatively short time span after [defendant] provided his consent, we conclude that Trooper Scott's search was within the scope of [defendant's] consent").[6]

Federal case law is uniform in this totality of the circumstances approach, as every United States Circuit Court of Appeals has employed such inquiry. *See, e.g., United States v. Stierhoff*, 549 F.3d 19, 24 (1st Cir. 2008) ("We add that the defendant's present

---

[6] I find the majority's attempt to limit the *Reid* Court's consideration of Reid's failure to revoke his consent to the facts to be unpersuasive. Indeed, *Reid* — like *Smith*, and virtually every federal circuit addressing the issue — is entirely consistent with Fourth Amendment jurisprudence, and the majority cites to no authority to the contrary.

statement of his subjective belief that the search would be strictly limited to his computer lacks even a patina of plausibility. He observed the search in progress and voiced no objection to either the ransacking of his room or the opening of his unlocked briefcase."); *United States v. Villegas*, 928 F.2d 512, 518 (2nd Cir. 1991) (noting, in determining scope of consent, that permission to search the entire item and its contents was never withdrawn); *United States v. Comegys*, 504 Fed. Appx. 137, 143 (3rd Cir. 2012) (in examining scope of consent, court considered that defendants did not limit their consent or attempt to withdraw consent at any time during the stop); *United States v. Jones*, 356 F.3d 529, 534 (4th Cir. 2004) ("a suspect's failure to object (or withdraw his consent) when an officer exceeds limits allegedly set by the suspect is a strong indicator that the search was within the proper bounds of the consent search"); *United States v. Mendoza-Gonzalez,* 318 F.3d 663, 670 (5th Cir. 2003) ("A failure to object to the breadth of the search is properly considered an indication that the search was within the scope of the initial consent." (internal quotation marks omitted)); *United States v. Lucas*, 640 F.3d 168, 178 (6th Cir. 2011) (finding computer was within scope of consent to search where defendant confirmed to officer that computer was not password-protected and he did not object in any way to the search of the electronic files contained therein); *United States v. Torres*, 32 F.3d 225, 231 (7th Cir. 1994) (where defendant authorized entry and search of the motor vehicle and trailer, did not allege his box or trailer was damaged, and he did not timely object to the search of the container, court held police search did not exceed scope of defendant's consent); *United States v. Siwek*, 453 F.3d 1079, 1085 (8th Cir. 2006) (in determining whether length of search exceeded scope of consent, court noted that, during time of search, defendant made no effort to withdraw or limit the scope of his consent and did not protest in any manner the continuation of the search; with respect to argument that consent was withdrawn, court considered that, during encounter,

defendant conversed with officer, could see the officer performing the search, and never objected to search of any part of truck); *United States v. Cruz-Castro*, 378 Fed. Appx. 632, 635 (9th Cir. 2010) (failure to object to the continuation of a vehicle search after giving general consent to search "is properly considered as an indication that the search was within the scope of the initial consent." (*quoting United States v. Cannon*, 29 F.3d 472, 477 (9th Cir. 1994)); *United States v. McRae*, 81 F.3d 1528, 1538 (10th Cir. 1996) (in determining scope of consent, court considered that "at no time did [defendant] object to the search as conducted. As we have recognized, '[f]ailure to object to the continuation of the search under these circumstances may be considered an indication that the search was within the scope of the consent.'" (citations omitted)); *United States v. Telcy*, 362 Fed. Appx. 83, 86 (11th Cir. 2010) (concluding reasonable to believe that defendant's consent encompassed a safe in his bedroom where he failed to object to a search of the safe, and he told police where to find the key). Moreover, scholarship confirms the same. S*ee generally* 4 LaFave, *Search and Seizure* § 8.1(c), 23 (5th ed.) (offering that failure to object when search allegedly exceeded consent indicates search was actually within scope of consent).[7]

This principle of considering all the circumstances surrounding the exchange between the citizen and police is consistent with the underlying premise that the scope of a search is within the sole authority of the citizen who can limit it as he or she deems

---

[7] The majority's attempt to distinguish this unanimity among the federal court of appeals with respect to a totality of the circumstances inquiry is, in my view, unconvincing. First, while the majority asserts these decisions are inapt because they involve whether "the area searched" was within a scope of consent rather than the "type of search" being within that scope, Majority Opinion at 24, it does not explain why consent for the one would be judged differently than for the other. Moreover, the simple point demonstrated by these decisions is that, in determining the contours of consent — whether the area or type of search — a full examination of all of the surrounding circumstances is undertaken — that is, the inquiry is not limited to the majority's "time of consent" approach, an approach which is, in my view, unjustifiably restrictive.

proper, and, indeed, can terminate the search at any time, and the police must scrupulously honor the scope of, or termination of, that consented-to search. Indeed, the majority's approach would countenance a defendant, who is in a clear position to object and observes a violation of the scope of the search in plain sight, to sit idly by and only later complain.

Based upon these critical circumstances, viewed in the light most favorable to the Commonwealth as the prevailing party below, I believe that Appellant has failed to establish that the canine sniff exceeded the scope of his consent.

Further, in my view, the 40-minute delay in performing the canine search was not beyond the scope of Appellant's consent. First, I would eschew a formulaic approach to whether the duration of a search is beyond one's consent. Again, whether a search exceeds the duration of the consent turns on what a reasonable person would have understood the duration to be under the circumstances. Consistent therewith, I note that the traffic stop and subsequent consented-to search took place in a largely rural region in the center of the state near Bellefonte, Pennsylvania. The K-9 unit involved in the search was 30 miles away. N.T. Omnibus Pretrial Motion Hearing, 8/8/14, at 87. While this search was conducted on Interstate 80, a canine unit is not always readily available, and, where a K-9 unit is not initially involved in a stop, it will take some time for such a unit to be summoned and arrive. In my view, a wait of 40 minutes is not, in and of itself, objectively unreasonable, and case law supports such a conclusion. *See United States v. Carbajal-Iriarte*, 586 F.3d 795, 799 (10th Cir. 2009) (delay of 69 minutes did not exceed scope of consent); *Gray v. State*, 441 A.2d 209, 221 (Del. 1981) (individual's consent to search certain items, including watch, remained valid even though consent was given 20 hours before items actually searched); *State v. Williams*, 313 S.E.2d 236, 237-38 (N.C. App. 1984) (approving search of automobile 23 hours after consent given); *State v.*

*Grega*, 721 A.2d 445, 452-53 (Vt. 1998) (individual's consent to search condominium had not expired even though given two days prior to final police search); *Reid*, 811 A.2d at 549 (three days considered "within a relatively short time span after [defendant] provided his consent").[8]

Second, the circumstances *sub judice* indicate that Appellant gave a general consent both orally and in writing to search his vehicle, that he did not limit his consent to any specific time period, and that he waited in a heated police cruiser for 40 minutes, with a trooper, before any search commenced. While the officers standing inactive during this time were in plain sight of Appellant, he made no inquiry, objection, or revocation of his consent regarding the delay. Even upon the arrival of the K-9 unit in his plain view, Appellant remained mute as the search commenced and thereafter. Appellant's claim that a 40-minute wait after he consented to a search was intrusive and rendered the search beyond the scope of his consent is undermined by the above facts. It is important to remember that, while any search may result in a disruption of travel plans, inconvenience, and intrusion, here, Appellant consented to the search — consent which could have been clarified or revoked at any time. Based upon these particular circumstances, again, viewed, as we must, in the light most favorable to the Commonwealth as the prevailing party below, in my view, Appellant has failed to establish that the 40-minute delay exceeded the scope of his consented-to search.

---

[8] *Reid* is admittedly not directly on point in this regard as Reid was placed in custody after giving his initial consent to search and an initial roadside search of the vehicle was conducted, but, thereafter, his truck was towed to a storage facility, and was searched a second time by police several days later. While the majority points to then-Justice, now Chief Justice, Saylor's concurrence, offering that, to be within the proper scope of consent, a search must be conducted "forthwith and that only a single search will be made," *Reid*, 811 A.2d at 556, I would conclude "forthwith" could encompass a delay of 40 minutes. Again, the duration of the search must be evaluated under all the circumstances.

Accordingly, I conclude Appellant's consent was voluntary; the scope of his consent included a canine sniff; and the delay to perform such search was within the scope of his consent.

Justice Baer joins this concurring and dissenting opinion.